


## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                  Plaintiff,

v.

**SENIOR LIFE INSURANCE COMPANY,**
a Georgia corporation;

**THOMAS BERNARD CLEMENTS,**
an individual; and

**FRANKLIN GUS POLIS,**
an individual,

                  Defendants.

Case: 2:23-cv-10071
Judge: Borman, Paul D.
MJ: Altman, Kimberly G.
Filed: 01-11-2023 At 10:31 AM
CMP MARK DOBRONSKI V SENIOR LIFE
INSURANCE CO ET AL (SS)

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

### **Parties**

1

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant SENIOR LIFE INSURANCE COMPANY ("SLIC"), is a corporation organized and existing under the laws of the State of Georgia, with a principal office being located at 1 Senior Life Lane, Thomasville, Georgia 31792.

4. Upon information and belief, Defendant THOMAS BERNARD CLEMENTS ("Clements") is an individual, of the age of majority, is mentally competent, is not in the military service, resides at 8303 Studley Road, Mechanicsville, Virginia 23116, and holds himself out as being an employee or agent for Defendant SLIC.

5. Upon information and belief, Defendant FRANKLIN GUS POLIS ("Polis") is an individual, of the age of majority, is mentally competent, is not in the military service, resides at 5951 London Lane, Tamarac, Florida 33321, and holds himself as being an employee or agent for Defendant SLIC.

### Jurisdiction

6. This Court has jurisdiction over the subject matter of this complaint

2

pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

7. This Court has limited personal jurisdiction over Defendant SLIC pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

8. In addition, Defendant SLIC is licensed, pursuant to M.C.L. § 500.402, *et seq.*, by the Michigan Department of Insurance and Financial Services ("MDIFS") to act as an insurer and to transact insurance in the state of Michigan.

9. This Court has limited personal jurisdiction over Defendants Clements and Polis pursuant to M.C.L. § 600.705, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; and/or contracting to insure any person, property, or risk located within this state at the time of contracting.

10. In addition, Defendants Clements and Polis are each are licensed, pursuant to M.C.L. § 500.1201a, *et seq.*, by the MDIFS to act as insurance producers to sell, solicit, and negotiate insurance in the state of Michigan.

## Venue

11. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the

3

tortious or illegal telephone calls complained of herein were received in this judicial district.

## The Telemarketing Laws

12. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

13. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

14. Congress explicitly found that robo-calling is an invasion of privacy.

15. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...."

4

See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

16. According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

17. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

18. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

19. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

20. The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— ...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)...."

21.  Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

22.  The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

"(a) No person or entity may:

6

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...

(iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit

7

organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...

(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on

8

whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. . . ."

23. The TCPA implementing regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number

9

used in, or billed for, making the call) the name of the
seller on behalf of which the telemarketing call is placed
and the seller's customer service telephone number. **The
telephone number so provided must permit any
individual to make a do-not-call request during regular
business hours.**

(2) Any person or entity that engages in telemarketing is
prohibited from blocking the transmission of caller
identification information." [Emphasis added.]

24.  The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action,

as follows:

"PRIVATE RIGHT OF ACTION.  **A person or entity**
may, if otherwise permitted by the laws or rules of court of
a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the
regulations prescribed under this subsection** to enjoin
such violation,

(B) an action to recover for actual monetary loss from such
a violation, or to receive $500 in damages **for each such
violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly
violated this subsection or the regulations prescribed under
this subsection, the court may, in its discretion, increase the
amount of the award to an amount equal to not more than
3 times the amount available under subparagraph (B) of
this paragraph." [Emphasis added.]

25.  Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the

10

FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

> "No person or entity shall initiate any telephone solicitation to:...
>
> "(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

26. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private right of action, as follows:

> "Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or
>
> (C) both such actions.
>
> It shall be an affirmative defense in any action brought

under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

27. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

28. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made...."

29. The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

"(1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

30. Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

31. Plaintiff's residential telephone number is 407-XXX-0222.

32. Plaintiff's residential telephone number 407-XXX-0222 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least August 24, 2022 and at all times relevant hereto.

33. By listing his residential telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and

every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

34.  Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

35.  The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

36.  Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

37.  At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

38.  At no time has Plaintiff provided permission to the Defendant to engage

14

in telephone solicitation with the Plaintiff via telephone.

39.    At no time has Plaintiff provided "prior express written consent" for Defendant or anyone acting on behalf of Defendant to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

40. The FCC has declared that purporting to receive consent during a call does not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003).

41.    Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

42.    The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our

> telemarketing rules and calls placed by a third party on
> behalf of that company are treated as if the company itself
> placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

43. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

44. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that

he acted as an agent for the corporation and not on his own behalf.

45. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

46. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

47. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

48. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

49. For purposes of the TCPA, the FCC has defined "willfully or knowingly"

to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

50. Defendant SLIC is well aware of the requirements of the TCPA, as SLIC has been previously sued on at least 4 prior occasions – including 2 class actions – in federal district courts for violating the TCPA.[1]

### **Allegations Specific to this Complaint**

51. Defendant SLIC is an insurance companys engaged in providing insurance products to consumers across the United States, and relevant hereto, in particular to consumers in the state of Michigan.

52. Defendant SLIC relies upon employees and authorized agents to market and sell their insurance products to consumers.

53. Defendants Clements and Polis are each either employees or authorized agents for Defendant SLIC.

54. As part of their marketing program, SLIC their agents and employees with access to the company's information and computer systems that normally would be

---

[1]     *Warren v. SLIC*, Case No. 18-cv-02565 (N.D. Tex.); *White v. SLIC*, Case No. 19-cv-00059 (S.D. Ga.); *Mey v. SLIC*, Case No. 20-cv-00033 (N.D. W.V.); *Miholic v. SLIC*, Case No. 21-cv-01123 (S.D. Cal.).

within the company's exclusive control, including: access to detailed information regarding the nature and pricing of the company's products or services; to the company's customer information; and the ability to ensure consumer information into the company's sales or customer systems, as well as the authority to use the company's trademark and service market.

55. Upon information and belief, as part of their marketing practices, the Defendants engage in outbound telemarketing to reach consumers for the purpose of marketing the various insurance products.

56. As part of their telemarketing programs, Defendants will outsource their outbound telemarketing to call centers utilizing automated telephone dialing systems to initiate telephone calls *en masse* to consumers to develop prospective buyers for the insurance products.

57. These call centers are usually located outside the United States, typically in the Asian continent, and thus usually outside the reach of United States laws and law enforcement authorities.

58. The call centers, in turn, hire individuals to act as lead generators – known in telemarketing parlance as "ropers" – to pre-qualify called consumers as to whether the consumer meets the qualification criteria for specific insurance products.

59. The lead generator or "roper" will engage in deceptive and illegal

19

techniques to solicit consumers, including, *inter alia*: manipulating the caller identification such that the caller cannot be easily identified or called back; identifying with a false or generic-sounding business name; deliberately calling telephone numbers which appear on the National Do Not Call Registry; refusing to provide identifying information to the called party upon inquiry; uttering profanities to or otherwise threatening or harassing the called party if the consumer does not cooperate by expressing interest or providing requested personal information or the called party requests not to be called.

60.    Once a lead generator or "roper" has a consumer who meets the qualification criteria defined by SLIC – referred to in telemarketing slang as the "mark" – the lead generator will then live transfer the call to an agent who will then attempt to close the sale of the insurance product to the consumer. It is usually only late at this stage that a called party might learn any identifying information as to the source of the telephone call.

61. SLIC and its employees and agents all are well aware of the illegal tactics being used by their contracted call centers, but are deliberately indifferent to what is occurring so as to be able to represent that they are "unaware" of the illegal telemarketing conduct.

62. In the past 12 months alone, Plaintiff has received well over 500 telephone

calls on his residential and cellular telephone lines from telemarketers who have falsified or "spoofed" their caller identification and who identify as being with "Senior Benefits", "American Benefits", "Medicare Benefits" or similar generic sounding names, and during which call where Plaintiff was unable to develop the true identify of the ultimately responsible seller.

63. Because the telemarketers engage in such deceptive practices designed to conceal their actual identities, Plaintiff has had to engage in various investigative techniques to identify the sources of the telemarketing calls being received.

64. One investigative technique utilized by Plaintiff is termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name.  If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

65.  As discovery progresses in this case and Plaintiff is able to learn the identity or identities of the call centers that Defendants have utilized to initiate the telephone solicitations, Plaintiff will seek to amend this complaint to add the call centers as additional named defendants.

<u>Call Number 1</u>

66. On November 29, 2022, at approximately 3:41 P.M., Plaintiff's residential

21

telephone line 407-XXX-0222 rang.

67. The caller identification number displayed was 754-266-8048 and the caller identification name displayed was V129154121000.

68. Upon answering the telephone line, after saying "hello", Plaintiff heard a "boink" sound followed by a 4-5 second delay before a live telemarketer who identified himself as "This is Benjamin" came onto the line.

69. "Benjamin" then proceeded to pre-qualify Plaintiff for a life insurance policy and sought personal information from Plaintiff, including Plaintiff's name, date of birth, address, zip code, etc. Plaintiff engaged in providing controlled false information to Benjamin, including the *faux* name of Michael Jenkins.

70. The call was then transferred to an individual who identified himself as "Thomas Clements... a licensed insurance agent with Senior Life Insurance Company."

71. Clements then attempted to sell Plaintiff a $12,000 life insurance policy issued by SLIC for a premium of $92.63 per month.

72. Clements then proceeded to confirm Plaintiff's *faux* name, and to obtain Plaintiff's address, date of birth, medical information, driver's license number, social security number, and email address, to which Plaintiff provided controlled (false) information.

73. During the course of the conversation, Plaintiff inquired of Clements as to the identity of the telemarketer that initially was on the call, to which Clements responded that the individual is "a telemarketing firm" which is utilized by SLIC "in the grand scheme of things" and the telephone calls are transferred to him.

74. After the termination of the telephone call, Clements sent an email to the controlled email address provided by Plaintiff. The email included a brochure regarding SLIC and Clement's licensure as an insurance producer.

75. Immediately after the termination of the telephone call, Plaintiff dialed back the caller identification number displayed (754-266-8048) and received a recording that the telephone number was disconnected.

76. The fact that the caller identification information showed date/time information instead of a name, a "boink" sound and delay was observed prior to the telemarketer speaking, and that the caller identification number was a false number are all indicative that an automatic telephone dialing system was utilized.

<u>Call Number 2</u>

77. On November 30, 2022, at approximately 12:32 P.M., Plaintiff's residential telephone line (407-XXX-0222) rang.

78. The caller identification number displayed was 229-236-3574 and no caller identification name was displayed.

23

79.  Upon answering the call, after saying "hello", Plaintiff observed a delay of approximately 4 seconds before a female voice was heard identifying herself as "Tomia Rumson... with the home office of Senior License Insurance Company."

80.  Rumson asked to speak with Michael Jenkins.

81.  Rumson wanted to ask some follow up questions regarding the application made with Thomas Clements the day prior.

82.  Plaintiff confronted Rumson regarding the inordinate number of telephone calls Plaintiff had been receiving attempting to sell Plaintiff final expense insurance.

83.  Plaintiff informed Rumson that Plaintiff's telephone number is listed on the National Do Not Call Registry, yet Plaintiff continues to receive the unwanted telephone soliciations.

84.  Rumson referred the call to a "Danielle" (who would not provide a surname), who informed Plaintiff that Plaintiff must have requested information on Facebook, or a mail in, or responded to a television commercial to be receiving telephone solicitations from SLIC.  Plaintiff informed Danielle that he had made no such requests; which was evidenced by the fact that the calling telemarketers did not have Plaintiff's name to begin with and had to seek a name from Plaintiff.

85.  Plaintiff made demand to Danielle that Plaintiff not be contacted by SLIC again.

86. Plaintiff made demand to Danielle for a copy of SLIC's "do not call" policy, to which Danielle responded that they do not have one.

87. The delay after answering the call before the calling party came onto the line, and the fact that the caller identification name was not displayed, are indicative that an automatic telephone dialing system was utilized.

Call Number 3

88. Approximately *one minute* after Plaintiff hung up with Call Number 2, on November 30, 2022, at approximately 12:53 P.M., Plaintiff's residential telephone line 407-XXX-0222 rang.

89. The caller identification number displayed was 769-210-5514 and the caller identification name displayed was "V130125306000".

90. Upon answering the telephone line, after saying "hello", Plaintiff heard a click sound followed by a 4-5 second delay before a live telemarketer who identified himself as "Hi this is Adam" came onto the line.

91. "Adam" then proceeded to pre-qualify Plaintiff for a life insurance policy and sought personal information from Plaintiff, including Plaintiff's name, date of birth, address, zip code, etc. Plaintiff engaged in providing controlled false information to Benjamin, including the *faux* name of Zachary Garber.

92. The call was then transferred to an individual who identified himself as

"Frank Polis... a licensed insurance agent with Senior Life Insurance Company."

93. Polis then attempted to sell Plaintiff a life insurance policy issued by SLIC.

94. Polis then proceeded to confirm Plaintiff's *faux* name, and to obtain Plaintiff's address, date of birth, medical information, driver's license number, social security number, and email address, to which Plaintiff provided controlled (false) information.

95. During the course of the conversation, Plaintiff inquired of Polis as to the identity of the telemarketer that initially was on the call, to which Polis responded that he has an agency in Pakistan that does transfers; he has no idea how they obtain the leads; they merely transfer the calls to him.

96. Immediately after the termination of the telephone call, Plaintiff dialed back the caller identification number displayed (769-210-5514) and received a recording that the telephone number was not in service.

97. The fact that the caller identification information showed date/time information instead of a name, a "click" sound and delay was observed prior to the telemarketer speaking, and that the caller identification number was a false number are all indicative that an automatic telephone dialing system was utilized.

98. Several days after the call, via United States Mail, Plaintiff received a life insurance policy issued by SLIC to Zachary Garber.

Additional Calls

99.  On November 30, 2022, at approximately 3:44 P.M., Plaintiff received a telephone call from Heath Bassett, General Counsel for SLIC, in response to an earlier "do not call" demand which Plaintiff had left with SLIC's customer service personnel.  Bassett claimed that he did not know the source of any of the telephone calls which Plaintiff had received.  Further, when Plaintiff informed Bassett that "Danielle" had told Plaintiff that SLIC does not have a "do not call" policy, Bassett claimed that "Danielle" was misinformed and that Bassett would send Plaintiff the policy.  It was not until December 15, 2022 that Bassett sent the alleged "do not call" policy to Plaintiff, and the manner in which the document was sent strongly evidences that the policy did not exist prior to the telephone conversation.

100.  Over the past twelve (12) months alone, Plaintiff has received over 100 telephone calls to his residential telephone line (407-XXX-0222) wherein the calling party utilized a false or spoofed caller identification number, wherein the telemarketer was attempting to pre-quality Plaintiff for "final expense" or life insurance.  Through the course of discovery, Plaintiff intends to establish that many of these calls are related to the same defendants in this case, at which time Plaintiff will amend his claims against the defendants to include damages related to these additional calls.

**COUNT I**
**VIOLATION OF THE TCPA - ROBOCALL**

27

101.  Plaintiff incorporates the allegations of paragraphs 1 through 100, *supra*.

102.  Each of Call Numbers 1 through 3, inclusive, were in violation of the TCPA and its implementing regulations, specifically 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(3), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone line using an automatic telephone dialing system without the prior express written consent of the called party and there being no emergency.

103.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT II**
**VIOLATION OF THE TCPA - CALL ABANDONMENT**

104.  Plaintiff incorporates the allegations of paragraphs 1 through 100, *supra*.

105.  Each of Call Numbers 1 through 3, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7), as the call was not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

106.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT III**
**VIOLATION OF THE TCPA - DO NOT CALL**

107.  Plaintiff incorporates the allegations of paragraphs 1 through 100, *supra.*

108.  Each of Call Numbers 1 through 3, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

109.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

### COUNT IV
### VIOLATION OF THE TCPA - NO WRITTEN DNC POLICY

110.  Plaintiff incorporates the allegations of paragraphs 1 through 100, *supra.*

111.  Each of Call Numbers 1 through 3, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(1), as Defendants and/or Defendants' agents failed to have a written do not call policy, available upon demand, for maintaining a do-not-call list.

112.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

### COUNT V
### VIOLATION OF THE TCPA - FAILURE TO TRAIN

113. Plaintiff incorporates the allegations of paragraphs 1 through 100, *supra*.

114. Each of Call Numbers 1 through 3, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(2), as Defendants and/or Defendants' agents failed to inform and train their personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

115. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VI**
**VIOLATION OF THE TCPA - FAILURE TO IDENTIFY**

116. Plaintiff incorporates the allegations of paragraphs 1 through 100, *supra*.

117. Each of Call Numbers 1 through 3, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's residential telephone line for telemarketing purposes and the person or entity making the call did not provide Plaintiff with the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted

118. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VII**

## VIOLATION OF THE TCPA - FALSIFIED CALLER ID

119. Plaintiff incorporates the allegations of paragraphs 1 through 100, *supra*.

120. Each of the following Calls: 1 and 3; were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours; and, additionally, the caller identification information did not include the name of the telemarketer or the seller on whose behalf the telemarketing call was placed.

121. The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

### COUNT VIII
### VIOLATION OF THE MHSSA

122. Plaintiff incorporates the allegations of paragraphs 1 through 100, *supra*.

123. Each of Call Numbers 1 through 3, inclusive, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. § 445.111b(1), as Defendants or Defendants' agents did not at the beginning of the

telephone solicitation state his or her name and the full name of the organization on whose behalf the call was initiated and provide a telephone number of the organization on request.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severallyu, as follows:

A.    Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I     | 3          |
| II    | 3          |
| III   | 3          |
| IV    | 3          |
| V     | 3          |
| VI    | 3          |
| VII   | 2          |

A total of 20 violations at $500 per violation for damages of $10,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $30,000.00.

B. Damages for violations of the MHSSA alleged at Count VIII: 3 violations at $250.00 per violation, for damages of $750.00.

The cumulative total amount of damages claimed in this action is $30,750.00,and in the event of default judgment is the sum certain damages amount

that will be sought.

C.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

D.  An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's telephone lines.

E.  Interest accruing from the date of filing until paid at the statutory rate; and,

F.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: January 9, 2023

_____
Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: <u>Washtenaw, Michigan</u>

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**DEFENDANTS**

SENIOR LIFE INSURANCE COMPANY, THOMAS BERNARD CLEMENTS, and FRANKLIN GUS POLIS

**(b)** County of Residence of First Listed Plaintiff   <u>Orange, Florida</u>
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   <u>Thomas, Georgia</u>
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: <u>Nature of Suit Code Descriptions.</u>

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 USC 227

Brief description of cause:
Unsolicited Telemarketing Calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
January 9, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?        ☐ Yes
                                                                   ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously        ☐ Yes
          discontinued or dismissed companion cases in this or any other      ☑ No
          court, including state court? (Companion cases are matters in which
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes : _____

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020. All rights reserved.

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

Retail

US POSTAGE PAID
$9.90

Origin: 48130
01/09/23
2825100130-09

0 Lb 8.10 Oz

RDC 22

PRIORITY MAIL®

C052

EXPECTED DELIVERY DAY: 01/10/23

SHIP
TO:
231 W LAFAYETTE BLVD
FL 5TH
DETROIT MI 48226-2777

USPS TRACKING® #

9505 5123 0482 3009 9850 82

EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

UNITED STATES
POSTAL SERVICE

P

■ Expected delivery date specifi
■ Most domestic shipments incl
■ USPS Tracking® included for d
■ Limited international insurance
■ When used internationally, a cu

*Insurance does not cover certain items.
Domestic Mail Manual at http://pe.usps.
** See International Mail Manual at http://

FLAT RATE EN
ONE RATE ■ ANY WEIGHT

TRACKED ■ INS

PS00001000014